1
2
3                    UNITED STATES DISTRICT COURT

4                   NORTHERN DISTRICT OF CALIFORNIA

5

6    FLOYD JACKSON,                          Case No. 17-cv-04254-JST (PR)

7                   Petitioner,

8           v.                              **ORDER DENYING PETITION FOR
                                            WRIT OF HABEAS CORPUS;
9    SHAWN HATTON, Warden,                   GRANTING CERTIFICATE OF
                                            APPEALABILITY**
10                  Respondent.

11

12          Before the Court is the above-titled petition for a writ of habeas corpus, filed pursuant to

13   28 U.S.C. § 2254 by petitioner Floyd Jackson, challenging the validity of a judgment obtained

14   against him in state court.  Respondent has filed an answer to the petition.[1]  Petitioner has not filed

15   a traverse, and the time in which to do so has passed.  For the reasons set forth below, the petition

16   is denied.

17   **I.     PROCEDURAL HISTORY**

18          On December 19, 2011, an Alameda County jury convicted petitioner of attempted murder,

19   and found true allegations that he: (1) personally and intentionally discharged a firearm causing

20   great bodily injury, and (2) was a felon in possession of a firearm.  Clerk's Transcript[2] ("CT") at

21   325-26, 456-57.  Petitioner admitted three prior convictions for which he had served prison terms,

22   including one strike prior.  Reporter's Transcript[3] ("RT") at 501-02.  Petitioner was sentenced to

23   50 years and four months to life in state prison.  CT 336; RT 514-15.

24   _____

25   [1] William Muniz, the previous warden of Salinas Valley State Prison, where petitioner is
     incarcerated, was originally named as the respondent in this action.  Pursuant to Rule 25(d) of the
26   Federal Rules of Civil Procedure, Shawn Hatton, the current warden of Salinas Valley State
     Prison, is hereby SUBSTITUTED as respondent in place of petitioner's prior custodian.

27   [2] The Clerk's Transcript is docketed at ECF No. 14-1.

28   [3] The Reporter's Transcript is docketed at ECF No. 14-2.

United States District Court
Northern District of California

On October 29, 2013, the California Court of Appeal affirmed the judgment of conviction. Ex. 6.[4] On January 15, 2014, the California Supreme Court denied review. Ex. 8. Petitioner filed a habeas petition in the Alameda County Superior Court, which was denied in a reasoned ruling on the merits on February 27, 2015. Ex. 9. Petitioner then filed a habeas petition in the California Court of Appeal, which was summarily denied on November 24, 2015.[5] Petitioner then filed a habeas petition in the California Supreme Court, which was summarily denied on July 20, 2016. Exs. 10-11. The instant action was filed on July 26, 2017.

## II. STATEMENT OF FACTS

The following summary describing the crime and evidence presented at trial is from the opinion of the California Court of Appeal:[6]

> In the early morning hours of September 10, 2011, Angelique Payton was asleep in her home with appellant, her then boyfriend. [FN 2]. Around 6:00 a.m., Payton's ex-boyfriend, Torrance Mackey, woke her by throwing rocks at her bedroom window. Payton told appellant to let her talk to Mackey, but appellant pushed her out of the way and left the bedroom. Payton saw a gun in appellant's pocket as he left.
>
> > [FN 2]: Payton did not testify at trial, but her testimony from the preliminary hearing was read into the record.
>
> Payton's son, Raymon Hill, was awakened around 6:00 a.m. that morning by the sound of Payton and appellant arguing in Payton's bedroom. [FN 3]. He heard a gun "cocked" and then saw appellant leave Payton's bedroom with a gun in his hand. Watching from inside the front door, Hill saw appellant and Mackey talking for about five minutes. He heard Mackey ask appellant, "You going to bust me?" which Hill understood to mean "You gonna shoot me?" Hill could not hear appellant's response. Mackey turned around and began to walk toward his vehicle. Hill then closed the front door and began to walk

---

[4] All references herein to exhibits are to the exhibits submitted by respondent in support of the answer, unless otherwise indicated.

[5] *See* California appellate courts on-line register of actions at http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=1&doc_id=2105581&doc_no=A144752&request_token=NiIwLSIkXkw2W1BNSCNdTEtJUFQ6UVxfJyNeWz9TUCAgCg%3D%3D

[6] The Court has independently reviewed the record as required by AEDPA. *Nasby v. McDaniel*, 853 F.3d 1049, 1055 (9th Cir. 2017). Based on the Court's independent review, the Court finds that it can reasonably conclude that the state court's summary of facts is supported by the record and that this summary is therefore entitled to a presumption of correctness, unless otherwise indicated in this order. *Hernandez v. Small*, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002); 28 U.S.C. § 2254(e)(1).

upstairs; while he was on the stairs, he heard gunshots. He ran outside and saw Mackey lying on his stomach under his vehicle. Appellant was gone.

> [FN 3]: Hill did not testify at trial, but his testimony from the preliminary hearing was read into the record.

Mackey testified that he got into an argument after appearing at Payton's house on the morning in question. Mackey did not have a weapon with him. He did not recognize appellant as the man with whom he argued, and did not remember many details about the argument because he "kind of blacked out." However, he did remember getting shot from behind as he was walking towards his car.

A crime scene investigator and expert in firearm trajectory found seven cartridge casings at the scene of the shooting. He also found six "bullet strikes" in the asphalt near Mackey's vehicle—indentations indicating a bullet had hit the street at that location. There was no evidence that more than one shooter had been involved in the shooting.

The doctor who initially treated Mackey found five "missile" wounds: "through and through" injuries to his shoulder, arm, and thigh; and wounds on his buttocks and his knee. Bullets or bullet fragments were found above Mackey's knee and in his thigh. The doctor could not tell whether the buttocks wound was caused by a bullet or something else.

Appellant did not testify or present any other witness in his defense.

*People v. Jackson*, No. A134869, 2013 WL 5806023, at *1-2 (Cal. Ct. App. Oct. 29, 2013).

## III. DISCUSSION

### A. Standard of Review

A petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state courts' adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v.*

*Taylor*, 529 U.S. 362, 412-13 (2000). Additionally, habeas relief is warranted only if the constitutional error at issue "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Williams*, 529 U.S. at 405-06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

The Supreme Court has repeatedly affirmed that under AEDPA, there is a heightened level of deference a federal habeas court must give to state court decisions. *See Hardy v. Cross*, 565 U.S. 65, 66 (2011) (per curiam); *Harrington v. Richter*, 562 U.S. 86, 103-04 (2011); *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam). As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" *Felkner*, 562 U.S. at 598 (citation omitted). With these principles in mind regarding the standard and limited scope of

4

review in which this Court may engage in federal habeas proceedings, the Court turns to petitioner's claims.

## B. Petitioner's Claims

Petitioner asserts the following grounds for relief: (1) trial counsel rendered ineffective assistance by failing to adequately argue to the jury that petitioner was guilty of assault with a firearm, a lesser-included offense of attempted murder, and (2) trial counsel rendered ineffective assistance by failing to present expert testimony on the ballistics evidence. The Court addresses these claims in turn.

### 1. State Court Opinion

The Alameda County Superior Court, on state habeas, was the last state court to have reviewed the claims in a reasoned decision, and it is that court's decision that this Court reviews herein. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). The Alameda County Superior Court ruled, in relevant part, as follows:

> Petitioner claims that he was denied . . . his right to effective assistance of counsel based on two factual claims: (1) trial counsel could and should have argued more effectively for the offense of assault with a firearm based on the ballistic evidence; and (2) trial counsel failed to consult with a ballistic expert to learn whether the ballistic evidence supported the defense theory. Petitioner alleges that he was prejudiced by his trial attorney's failures to argue the assault with the firearm instruction, to consult with a ballistic expert, and to present the expert's testimony about the ballistic evidence, which would have casted reasonable doubt as to whether Petitioner intended to kill the victim, as opposed to intending to frighten, intimidate, humiliate, or wound the victim with the seven shots fired.

> The petition fails to state [a] prima facie case for relief. Petitioner has not established ineffective assistance of [counsel]. To establish ineffective assistance of counsel under either the federal or state guarantee, a defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and that counsel's deficient performance was prejudicial, i.e., that a reasonable probability exists that, but for counsel's failings, the result would have been more favorable to the defendant. [Citations.]" (*In re Resendiz* (2001) 25 Cal.4th 230, 239 (*Resendiz*), abrogated on another ground in *Padilla v. Kentucky* (2010) 559 U.S. 356.) In assessing the reasonableness of counsel's performance, "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." (*Strickland v. Washington* (1984) 466 U.S. 668, 689 (*Strickland*).) "Surmounting *Strickland's* high bar is never an easy task." (*Padilla, supra,* 559 U.S. at p. 371.) "The *Strickland* standard must be applied with [']scrupulous care.[']" (*Cullen v. Pinholster* (2011) 563 U.S. —, —, 131 S. Ct. 1388, 1408.)

5

Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (*Strickland, supra*, 466 U.S. 668, 694.)  "If it is easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice, . . . that course should be followed." (*Strickland, supra*, 466 U.S. at p. 697.)  That assessment must be made in light of the totality of the evidence before the trier of fact.  (*Strickland, supra*, at 695.)  (*Strickland, supra*, 466 U.S. at p. 694.)

As to the first claim, Petitioner's ineffective assistance of counsel claim is based on the argument that trial counsel did not specifically argue that the jury could infer lack of intent to kill based on the physical evidence that six of the seven shot[s] left "strike marks" on the pavement between where the victim was found by the police and where the shooter was probably standing.  However, Petitioner's trial counsel did argue, in addition to pointing out inconsistency in the doctor's testimony regarding the victim's injuries, that the evidence supported an assault rather than attempted murder, and argued many facts in support of a [sic] assault instead of the attempted murder conviction.  Thus, Petitioner has not established that trial counsel's closing argument was deficient.  (*Cf. People v. Diggs* (1986) 177 Cal.App.3d 958, 970; *People v. Moore* (1988) 201 Cal. App. 3d 51, 57.)  Further, Petitioner also fails to establish prejudice given the amount of evidence of guilt of attempted murder.  Therefore, petitioner has not made a prima facie case for relief on the first claim for ineffective assistance of counsel.

As to the second claim, Petitioner again fails [to] establish prejudice.  Given the totality of the evidence at trial, including that the shooter shot at the victim seven times, it cannot be said that it is reasonable [sic] probable that the testimony and opinion of Mr. Grewal[7], assuming all of these were admissible, would have resulted in a different result other than the attempted murder conviction.  Consequently, Petitioner has failed to establish a prima facie case on the second claim of ineffective assistance of counsel.

Ex. 9.

## 2.    Legal Standard for Ineffective Assistance of Counsel Claims

Claims of ineffective assistance of counsel are examined under *Strickland v. Washington*, 466 U.S. 668 (1984).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686.  In order to prevail on a claim of ineffectiveness of counsel, a petitioner must establish two factors.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms, *id*. at 687-88, "not whether it deviated from

---

[7] As discussed below in connection with petitioner's second claim, Dr. Grewal is a ballistics expert who submitted a report supporting petitioner's state habeas petition.

best practices or most common custom," *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Strickland*, 466 U.S. at 690). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689).

Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693). It is unnecessary for a federal court considering an ineffective assistance of counsel claim on habeas review to address the prejudice prong, i.e., the second factor of the *Strickland* test, if the petitioner cannot establish incompetence, as required under the first prong. *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).

The standards of both 28 U.S.C. § 2254(d) and *Strickland* are "highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted). "[T]he question [under § 2254(d)] is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### 3. Counsel's Closing Argument

Petitioner claims that trial counsel rendered ineffective assistance by failing to adequately argue to the jury that petitioner was guilty of assault with a firearm rather than attempted murder. ECF No. 1 at 5, 7, 45-53. In addition to raising the claim on state habeas, petitioner raised this claim on direct appeal. The California Court of Appeal issued a decision on the claim as follows:

> The thrust of trial counsel's closing argument was the prosecution had not proved intent to kill. He portrayed Mackey as the aggressor and argued appellant was simply reacting, perhaps thinking Mackey had a weapon. Trial counsel argued the evidence showed Mackey was neither shot in the back nor shot while lying on the ground. This evidence, trial counsel suggested, was inconsistent with attempted murder: "Face-to-face, not with my back to you. And if you know nothing else, that's all you need to decide this case one way or the other. Was it an attempt to kill somebody who is apparently laying helpless on the ground and I walk away from you or is this an assault? And those are the choices

you're going to have to make. Is this an assault or is this an attempted murder?"

Appellant argues trial counsel's closing statement was ineffective because it did not formulate an argument based on certain ballistics evidence. According to appellant, trial counsel should have argued the six bullet strikes found on the street could only be the result of a gun fired directly at the ground because (1) only seven casings were found and therefore only seven bullets were fired; (2) the bullets either remained in Mackey's body and therefore did not subsequently strike the ground, or hit his upper body and therefore were not likely to then strike the ground nearby; and (3) any bullets fired at Mackey while he was lying down would likely have remained under his body and no such bullets were found. Appellant contends counsel should have argued this evidence shows Mackey's wounds resulted from bullets ricocheting off the ground and therefore appellant had no intent to kill.

The California Supreme Court has "repeatedly stressed 'that "[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] ... unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' [Citation.] A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding. [Citations.]" (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.) "[D]eference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage.... Judicial review of a defense attorney's summation is therefore highly deferential...." (*Yarborough v. Gentry* (2003) 540 U.S. 1, 6 (*Yarborough*).)

Appellant's trial counsel was not asked to explain why in his closing statement he did not make the above argument. We cannot say there could be no satisfactory explanation. Trial counsel may have considered the argument posited by appellant and concluded it was weak or would confuse the jury. "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." (*Yarborough, supra*, 540 U.S. at p. 8.) Accordingly, we reject appellant's claim.

*People v. Jackson*, 2013 WL 5806023, at *2-3 (footnote omitted).

This excerpt is given only for background. This Court does not evaluate the reasonableness of the court of appeal's opinion for two reasons. First, the Alameda County Superior Court's decision on state habeas came after the ruling on direct appeal, making the superior court's decision the last reasoned ruling. *See Ylst*, 501 U.S. at 803-04. Second the California Court of Appeal did not reach the claim "on the merits," but rather rejected the claim on the state procedural ground that ineffective assistance of counsel claims must be rejected on direct appeal where the record on appeal is silent as to counsel's reasons for the challenged course of action. Section 2254(d) only applies when the claim was "adjudicated on the merits" in state

court. Where the state courts do not reach the merits of the petitioner's constitutional claim, federal habeas review is not subject to the deferential standard that applies under AEDPA. *Cone v. Bell*, 556 U.S. 449, 472 (2009).

On state habeas, the California Court of Appeal and California Supreme Court summarily denied petitioner's state habeas petitions. This court "look[s] through the unexplained decision[s] to the last related state-court decision that does provide a relevant rationale" and then "presume[s] that the unexplained decision[s] adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Consequently, it is the opinion of the superior court on state habeas, excerpted above, that this Court reviews for reasonableness.

Based on a review of the record, the state court's rejection of this claim was not contrary to, and did not involve an unreasonable application of, Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Notably, counsel secured an instruction on assault with a firearm as a lesser-included offense of attempted murder over the prosecution's objection. RT at 447-52. Further, both during his questioning of witnesses and in his closing argument, defense counsel highlighted how the evidence did not support the prosecutor's theory of attempted murder and was more consistent with assault with a firearm.

Specifically, through defense counsel's cross-examination of police crime scene investigator Zachary Dexter, defense counsel clarified that if petitioner had stood over Mackey while he shot him six or seven times, one would expect six or seven bullet holes in Mackey's back, and would expect the bullets to either be retained in Mackey's body or, if they traveled through his body, be on the ground under his body. RT at 256-57. During closing argument, defense counsel highlighted the significance of this evidence as follows: "I asked Officer Dexter, the person was laying on the ground and I stood over and shot him in the back, you would expect the bullet to either remain in the body or be right under the body. That wasn't the case. You're asked to find attempted murder of a person that was shot in the back. It isn't there." RT at 412. Defense counsel also pointed out that Dr. Celada was unaware of the cause of certain of Mackey's injuries. RT at 416-17.

Defense counsel further argued that the evidence did not support a finding of attempted murder because petitioner had a conversation with Mackey before firing the shots, and because petitioner had the opportunity to shoot Mackey while he was helplessly lying on the ground but did not do so. Specifically, he argued, "If this was attempted murder, I don't hold a five-minute conversation with you." RT 415. Counsel proceeded, "Do I stand over you while you're down on the ground and shoot you? No." RT 415-16. Finally, defense counsel argued that the evidence did not support the theory that petitioner had continued to shoot Mackey once Mackey was lying on the ground. RT 417. As noted by the court of appeal, defense counsel argued, "Was it an attempt to kill somebody who is apparently laying helpless on the ground and I walk away from you or is this an assault? And those are the choices you're going to have to make. Is this an assault or is this an attempted murder?" RT at 417.

It is certainly true that counsel could have brought more of the ballistics evidence into his argument for assault. However, given the number of shots fired and the several wounds suffered by Mackey, counsel may have made a valid tactical decision to avoid focusing on the ballistics evidence. *See Richter*, 562 U.S. at 109 ("There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect."). In sum, it cannot be said that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. At a minimum, this Court cannot say the state court was unreasonable in so finding. *Richter*, 562 U.S. at 105.

### 4. Counsel's Failure to Consult a Ballistics Expert

Petitioner claims that trial counsel rendered ineffective assistance by not consulting with a ballistics expert. ECF No. 1 at 5, 55. Petitioner attaches to his petition a report prepared by Dr. Devinder Grewal, "a mechanical engineer providing accident reconstruction, failure analysis, engineering design, and laboratory/field testing services." ECF No. 1 at 73. Dr. Grewal was retained by petitioner's counsel during his state habeas proceedings. *See id.* After reviewing the evidence in the case, Dr. Grewal issued a report making the following conclusions:

(1) Six of the seven shots were fired downward toward the ground. The remaining shot could have been fired either into the ground or toward the truck.

(2) The tight grouping of five of the seven shots (as shown by the strike marks on the pavement), indicated that the shooter was at a close distance and aimed the gun at the ground.

(3) Given the close distance and tight aim of the shots, the shooter likely had the ability to aim and fire his shots at a different place on Mackey's body—for example, the torso or head—creating more fatal wounds than the ones actually inflicted. *Id.* at 78.

Based on a review of the record, and applying the standard for ineffective assistance of counsel claims outlined above, the state court's rejection of this claim was not contrary to, and did not involve an unreasonable application of, Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). First, as noted above, counsel could have made a reasonable tactical decision not to focus on the ballistics evidence given the number of shots fired and given the severity of Mackey's injuries. A ballistics expert would also have highlighted the fact that all seven shots came from the same firearm—a fact that had been established but was not presented to the jury due to the police department's failure to deliver the information to the prosecution before trial. *See* RT at 309-14. Further, to the extent the defense did rely on ballistics evidence, it was not unreasonable to use the prosecution's witnesses for this purpose. Evidence was presented at trial by the emergency room physician, Dr. Roberto Celada, and the police crime scene investigator, Zachary Dexter, suggesting the possibility that most of the wounds were caused by bullets that were not fired at the victim but at the pavement and ricocheted up to hit him. Dr. Celada testified that when Mackey first came to the hospital after the shooting, he was breathing and alert, and his blood pressure and pulse indicated he had not lost a lot of blood. RT at 291-92. Dr. Celada also testified that the knee injury could have been the result of a ricochet, RT at 294-95, and the femur injury could have been caused by a piece of asphalt, RT at 305. Most importantly, Dexter testified that he found 7 cartridge casings by the side of the street and 6 "strike marks" on the asphalt pavement and asphalt debris on the victim's truck, showing that 6 of the shots likely first hit the pavement. RT at 197, 233, 241-42, 245-46. Dexter also opined on the location of the shooter. RT at 233, 246-47. Finally, as noted above, on cross-examination Dexter testified that if the shooting victim had been lying on the ground when shot, either the bullets

11

would be found lodged in his body or on the ground where he had been lying. RT at 256-57. Dexter had training and experience in gunshot trajectory and shooting reconstruction. RT at 168-73, 215-16.

While it is certainly true that counsel could have bolstered the ballistics evidence by obtaining an outside expert, it cannot be said that counsel's decision to rely on the prosecution's witnesses and/or downplay the ballistics evidence fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. At a minimum, this Court cannot say the state court was unreasonable in rejecting this claim. *Richter*, 562 U.S. at 105.

### 5. Prejudice

Finally, although counsel certainly could have done more with the ballistics evidence, the Court does not find a reasonable probability that, but for counsel's failure to do so, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. It was not contested that petitioner fired seven shots and that at least one directly hit Mackey. Mackey was walking to his truck when he was shot from behind. RT at 77-79, 255, 294, 331. After he fell, he slid under his truck. RT at 78-79, 139, 166. Mackey was not carrying a gun or any other weapon that would have caused petitioner to believe that he needed to act in self-defense. RT at 75-76, 234-35.

Mackey was shot in his shoulder, femur, thigh, buttocks, and kneecap, and a bullet grazed his calf. Several bullets went through his body, and others remained in his body. RT at 98-99**,** 293-96. He needed two surgeries and was scheduled for a third surgery at the time of trial**.** RT at 98-99, 297-98.

In the end, it was not surprising that many of the bullets first struck the ground given that Mackey had taken shelter under his truck. Although several shots did not hit Mackey directly, they were certainly aimed toward him and still caused serious injuries. That they may have hit the pavement before injuring Mackey does not establish that it was petitioner's intent to strike only the pavement. If petitioner had intended only to scare Mackey off, he could have easily done so by firing one shot into the air. At some point, petitioner must have observed that the bullets were hitting Mackey, and yet petitioner continued to shoot. Given the number and direction of the shots alone, regardless of additional ballistics evidence and/or argument, a jury could reasonably

conclude that some shots simply missed Mackey as Mackey took shelter under his truck or even that, having hit Mackey once, petitioner was less able to hit his mark as asphalt debris obscured the target and as petitioner became concerned with fleeing the scene. In sum, additional focus on the ballistics would not have necessarily undermined a finding of intent to kill. At a minimum, the Court cannot say the state court was unreasonable in finding that petitioner was not prejudiced by counsel's performance. *Richter*, 562 U.S. at 105.

Accordingly, petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims.

## IV.    CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is DENIED.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, a certificate of appealability ("COA") under 28 U.S.C. § 2253(c) is GRANTED as to both claims. The Court finds that reasonable jurists viewing the record could find the Court's assessment of the claims "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The COA does not obviate the requirement that petitioner file a notice of appeal within **thirty (30)** days of this order.

The Clerk shall enter judgment in favor of respondent and close the file.

Additionally, the Clerk is directed to substitute Shawn Hatton on the docket as the respondent in this action.

**IT IS SO ORDERED.**

Dated: October 3, 2018

_____
JON S. TIGAR
United States District Judge